

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: June 19, 2020.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 19-50641-cag** |
| | § | |
| **CRYSTAL ROSE VARGAS,** | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |

_____

| | | |
|---|---|---|
| **CRYSTAL ROSE VARGAS,** | § | |
| Plaintiff. | § | |
| | § | **ADVERSARY NO. 19-05031-cag** |
| v. | § | |
| | § | |
| **PRESTAMOS DEL REY, LP,** | § | |
| Defendant. | § | |

### ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 42)

Came on for consideration the above-numbered adversary proceeding and, in particular,

Defendant's Motion for Partial Summary Judgment (ECF No. 42) (the "Motion")[1] and Plaintiff's

---

[1] Unless otherwise noted, all references to "ECF" herein refer to documents filed in Adversary Case No. 19-05031.

Response to Defendant's Motion for Summary Judgment (ECF No. 54) ("Response").[2] The Court took the matter under advisement. After considering the pleadings and arguments contained therein, the Court finds the Motion should be granted.

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 (a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) because it is a matter concerning administration of the estate. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This matter is referred to the Court pursuant to the District Court's Standing Order of Reference.

## Procedural Background

Crystal Rose Vargas ("Plaintiff") filed for Chapter 7 bankruptcy. One of her creditors is Prestamos Del Rey ("Defendant" or "PDR"). Plaintiff filed this adversary proceeding for damages, exemplary damages, injunctive relief, a fine, attorney's fees, and pre-judgment costs and interests for violating the automatic stay under 11 U.S.C. §§ 362(a)(1), (3), and (6).[3] (ECF No. 1). Defendant moved for partial summary judgment, arguing that: (1) the act of pulling Plaintiff's credit report does not constitute a violation of the automatic stay; (2) the telephone contacts between Defendant and Plaintiff regarding removal of Defendant's "hard pull" from Plaintiff's credit report do not constitute a violation of the automatic stay; and (3) that a post-petition letter sent by Defendant's collection agent SARMA on June 13, 2019 constitutes a violation of the automatic stay, but that the Parties must try the issue of whether "Defendant willfully violated the automatic stay . . . and whether Plaintiff suffered any damages as a result." (ECF No. 42).

---

[2] On June 1, 2020 Defendant filed an untimely Reply to Plaintiff's Response to Motion for Partial Summary Judgment (ECF No. 55) ("Reply"). *See* L.Rule 7007(c)(2) (providing that "a reply in support of a motion shall not be filed later than 7 days after the filing of the response to the motion"). Plaintiff did not object to the untimeliness of the Reply. The Court gave the Reply the appropriate weight when considering the arguments provided in the moving papers.
[3] All section references hereinafter shall refer to 11 U.S.C. unless otherwise specified.

2

**Factual Background**

On July 30, 2018, Plaintiff signed a promissory note with PDR for $700.00. (ECF No. 42, Ex. 1). On September 20, 2018, Plaintiff sent a letter to PDR (the "Pre-Petition Letter") notifying them that Plaintiff was "falling behind on payments." (*Id.*, Vargas Dep.); (*Id.*, Ex. 2). The Pre-Petition Letter also informed PDR that Plaintiff planned to file for Chapter 7 bankruptcy, and that Plaintiff was represented by counsel to whom all contacts regarding debt collection should be directed. (*Id.*). On September 25, 2018, Defendant received the Pre-Petition Letter. (ECF No. 54, Ex. 1); (Bonnin Decl.). Plaintiff and Defendant did not have contact from September 20, 2018 to March 23, 2019. (ECF No. 42, Vargas Depo.). On March 23, 2019, Plaintiff filed her Chapter 7 bankruptcy. (Case No. 19-50641-cag, ECF No. 1).

On May 9, 2019, Chelsea Richardson, a PDR employee, pulled Plaintiff's credit report. (ECF No. 42, Bonnin Decl.). The same day, Plaintiff received a notification regarding the credit pull through a credit reporting website. Plaintiff asked her husband, Favian Vargas, to call PDR to inquire why the credit pull occurred. (*Id.*, Vargas Depo.). Plaintiff's husband spoke to Ms. Richardson regarding the credit pull. (*Id.*, Richardson Decl.); (ECF No. 54, Ex. 4). The next day, on May 10, 2019, Diana Bonnin, one of the owners of PDR, requested that Plaintiff come into the office to sign a document that would assist PDR in removing the credit pull from Plaintiff's record. (*Id.*, Bonnin Decl.). Plaintiff agreed to come into PDR's office to sign a form to remove the credit pull, but Plaintiff never went to PDR's office to sign the form. (Vargas Depo.). After Ms. Bonnin's phone call with Plaintiff, PDR called Plaintiff two more times regarding removing the credit pull from Plaintiff's record—once on May 14, 2019 by an employee named "Michael," and again on May 20, 2019 by Ms. Richardson. (ECF No. 42). Both Plaintiff and Defendant agree that phone calls from employees at PDR never included a specific mention of an attempt to collect a debt.

3

(*Id.*, Vargas Depo.). On June 13, 2019, Plaintiff received a post-petition letter from SARMA—Defendant's third-party collections agent—stating Plaintiff's account was labeled as a charge-off account and SARMA was attempting to collect on Plaintiff's debt. *Id.*

## Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986). Courts employing this standard of review must determine "not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court." **James v. Sadler**, 909 F.2d 834, 837 (5th Cir. 1990) (citing **Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986)).

To prevail on summary judgment, the moving party has the burden of showing the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law. **Union Planters Nat. Leasing v. Woods**, 687 F.2d 117 (5th Cir. 1982). Rule 56 creates a shifting burden. Once a properly supported motion for summary judgment is presented, "the nonmoving party must rebut with 'significant probative' evidence." **Ferguson v. Nat. Broadcasting Co., Inc.**, 584 F.2d 111, 114 (5th Cir. 1978) (citations omitted). If the record "taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." **LeMaire v. Louisiana**, 480 F.3d 383, 390 (5th Cir. 2007). When there is no genuine issue for trial, the Court should grant summary judgment. *Id.*

## Analysis

Defendant's Motion poses three issues: (1) whether the Defendant's act of pulling

4

Plaintiff's credit report constitutes a violation of the automatic stay; (2) whether post-petition contacts and phone calls between Defendant and Plaintiff violate the automatic stay; and (3) whether SARMA's collections letter constitutes a violation of the automatic stay. (ECF No. 42). The Complaint alleges, in general terms, that the three acts described above violate §§ 362(a)(1), (3), and (6). (ECF No. 1). The Complaint, however, does not assign a specific Code violation to each act.

Section 362(a)(1) prohibits the "commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor" or "[recovery] of a claim against the debtor that arose before the commencement of [the bankruptcy case.]" 11 U.S.C. § 362(a)(1) (West 2020). Section 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise any control over property of the estate." 11 U.S.C. § 362(a)(3). Section 362(a)(6) prohibits "any act to collect, assess, or recover a claim against the debtor" arising prior to establishment of the automatic stay. In the Fifth Circuit, a claim for violating the automatic stay exists when: "(1) the defendant [knew] of the existence of the stay; (2) the defendant's acts [were] intentional; and (3) these acts …violated the stay." *In re Small*, 486 F. App'x. 436, 439 (5th Cir. 2012) (quoting *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 302 (5th Cir. 2005)). Section 362(k) "does not require a specific intent to violate the automatic stay," and only requires "that the defendant's actions which violated the stay were intentional." *Chesnut*, 411 F.3d at 302. PDR concedes that its staff knew the automatic stay was in place. (ECF No. 42, Bonnin Decl.). Therefore, the issues before the Court are: (1) whether PDR's alleged acts were intentional; and, (2) whether PDR's acts violate the automatic stay.

### I. Pulling Plaintiff's Credit Report Did Not Violate the Automatic Stay

After Plaintiff filed for bankruptcy, PDR made a "hard pull" of Plaintiff's credit. (ECF No.

5

42, p. 6). Defendant argues that PDR's credit pull was erroneous. (*Id.*). Moreover, Defendant contends that the credit pull was not an "act to collect, assess, or recover a claim against the debtor." (*Id.*). Defendant supports its assertions with evidence from Plaintiff's deposition where she stated her belief that PDR pulled her creditor to "validate" that she filed for bankruptcy. (Vargas Depo, pp. 35–36). In her Response, Plaintiff argues "verification of a bankruptcy is a collection matter" (ECF No. 54, ¶ 8).

The Court finds that PDR's pulling of Plaintiff's credit report did not violate the automatic stay. As mentioned, both parties concede Defendant knew the stay was in place. (*Id.*); (ECF No. 54). In addition, the evidence shows Defendant possessed the requisite intent under § 362(a). As provided in *Chesnut*, the intent required for a stay violation under § 362(a) is that there must be general—not specific—intent to commit the act in question. *Chesnut*, 411 F.3d at 302. Defendant argues Ms. Richardson mistakenly pulled Plaintiff's credit report, thus the intent element cannot be satisfied. (ECF No. 42, Richardson Decl.). Specifically, Ms. Richardson stated her "intentions were to pull a credit report for a different account." (ECF No. 42, Richardson Decl.). Defendant's argument regarding Ms. Richardson's specific intent to pull Plaintiff's credit report is irrelevant, because *Chesnut* only requires that Defendant committed an intentional act—in this case pulling a credit report. *Chesnut*, 411 F.3d at 302 ("the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional."). Therefore, the Court finds the intent element is satisfied.

Next, the Court must consider whether Defendant's act of pulling Plaintiff's credit report violates the stay. Section 362(a)(1)–(8) provide a list of acts which constitute a violation of the stay. One of the "categories of prohibited action is 'any act to collect, assess, or recover a claim against debtor that arose before the commencement of the case.'" *Collier v. Hill (In re Collier)*,

6

410 B.R. 464, 473 (Bankr. E.D. Tex. 2009) (quoting 11 U.S.C. § 362(a)(6)). The Complaint alleges that when Defendant pulled her credit report, it violated the stay, because the pulling of a credit report is "collection matter" that contravenes § 362(a)(6). (ECF No. 1).

This Court in *In re Mahoney* recognized that an act that is unlikely to succeed in collecting a debt is not a stay violation. 368 B.R. 579, 589 (Bankr. W.D. Tex. 2007). Furthermore, *In re Keller*, deals directly with the issue of whether continued credit reporting violates the stay. *In re Keller*, No. 12-22391-B-13, 2016 WL 3004488, at *1, *4 (Bankr. E.D. Cal. May 17, 2016). The court in *Keller* determined the act of continued credit reporting—even if the information is adverse—cannot constitute a violation under § 362(a), because Congress authorizes credit reporting through the Fair Credit Reporting Act (FCRA). 2016 WL 3004488, at *4. Determining that a creditor's act of continued credit reporting on a debtor violates the Bankruptcy Code would require Congress intending for either the FCRA or the Bankruptcy Code to invalidate the other, which cannot be the case. *Id*.

Here, Defendant argues pulling Plaintiff's credit report does not amount to a collections action, because the act alone is unlikely to collect a debt. (ECF No. 42) (citing *Mahoney*, 368 B.R. at 589). In response, Plaintiff argues pulling the credit report violates the automatic stay, because it began the process of collecting a debt. (ECF No. 54). Plaintiff does not provide any case law to support her argument that pulling a debtor's credit report while the debtor is in bankruptcy is a violation of the automatic stay under §§ 362(a)(1), (3), and/or (6). After considering the decisions in *Mahoney* and *Keller*, the Court agrees with Defendant that the singular act of pulling a credit report is neither the commencement of a legal proceeding under § 362(a)(1), an act to obtain possession of property of the estate under § 362(a)(3), nor an act to collect, assess, or recover claims against the debtor under § 362(a)(6). Therefore, the Court grants Defendant's Motion, and

finds that Defendant's act of pulling Plaintiff's credit report is not a violation of the automatic stay.

## II. Defendant's Telephone Contacts with Plaintiff Regarding Removal of the Credit Pull From Plaintiff's Credit Report Do Not Violate the Automatic Stay

Post-petition, Defendant conducted a hard credit pull that appeared on Plaintiff's credit report. The Parties agree that Plaintiff's husband called Defendant on the telephone to have the hard pull removed from Plaintiff's credit report. Thereafter, Defendant spoke with Plaintiff and Plaintiff's husband to discuss removal of the hard pull from Plaintiff's credit report. Defendant argues that the telephone contacts between Plaintiff and Defendant are not a violation of the automatic stay, because Mr. Vargas and Plaintiff initiated the contacts; the substance of the telephone calls pertained only to cleaning up Plaintiff's credit report; and there is no objective evidence of harassment or coercion. (ECF No 42, p. 9). Plaintiff argues that Defendant's telephone communication with Plaintiff and her husband violate the automatic stay, because they are part of a "pattern of misconduct" that "Defendant . . . well knew . . . was prohibited by the automatic stay." (ECF No. 54, p. 7).

The Court finds that Defendant's contacts with Plaintiff do not violate the automatic stay, because the contacts concerned removing the credit pull from Plaintiff's record, not collecting a debt. As mentioned, both parties concede Defendant knew the stay was in place. (ECF No. 42, Bonnin Decl.); (ECF No. 54). Furthermore, the evidence indicates—and Defendant never disputes—that each employee possessed the requisite intent of contacting Plaintiff each time regarding the credit pull on Plaintiff's record. (ECF No. 42, Bonnin Decl.).

Nevertheless, the issue here is whether Defendant's contacts with Plaintiff regarding removing the credit pull from Plaintiff's record violate the stay. ***In re Roth*** evaluated whether a communication constitutes a stay violation as a prohibited debt collection. 935 F.3d 1270, 1276 (11th Cir. 2019). The court determined the objective nature and effect of the communication by

the creditor could constitute a debt collection if it pressured a debtor to repay a debt. *Id.*

Here, Plaintiff initiated communication when Plaintiff's husband contacted Defendant. (ECF No. 42). Moreover, the contacts concerned removing the credit pull—not commencing a lawsuit against Plaintiff, acting to obtain property or exercise control over property of the estate, or acting to collect a debt. (*Id.*) Plaintiff acknowledges Defendant's contacts "were not calls demanding money." (ECF No. 54, p.15). Accordingly, the Court grants Defendant's Motion and finds that Defendant's contacts were not an attempt to collect a debt in violation of the stay.

### III.  SARMA Collections Letter

SARMA's collections letter appears to violate the automatic stay as an impermissible attempt to collect a debt. Moreover, parties concede that SARMA's action violates the stay. (ECF No. 42); (ECF No. 54). Nevertheless, it appears the issues of the willfulness of SARMA's acts and the extent to which the Court can award damages under § 362(k) remain at issue.[4] Accordingly, the Court invites the parties to specify within their pretrial order what elements and issues are stipulated to, and what issues and elements must be proven as to the SARMA collections letter. To the extent the parties are not conceding relevant elements under § 362, these issues are reserved for trial.

#### CONCLUSION

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Defendant's Motion for Partial Summary Judgment (ECF No. 42) is GRANTED.

IT IS FURTHER ORDERED that the Parties shall include in their pretrial order what issues remain to be litigated as to SARMA's collections letter.

---

[4] After the reply deadline, Defendant filed its Reply (ECF No. 55). Therein, Defendant "admits that it violated the automatic stay when it referred its account to SARMA and SARMA sent out a single collection letter." (*Id.* at ¶ 1).

All other counts, causes of action, and affirmative defenses not expressly granted or denied are RESERVED for trial.

SO ORDERED.

# # #